The question in this case is whether we are going to recognize that which we all know to be true and which Plaintiff proved below, which is that in the negotiation of a state workers' compensation case where there is a Social Security offset in play, the workers' compensation carrier takes that into consideration and puts, in effect, a lid on what it is willing to offer the claimant. Therefore, imposing the offset is a product of negotiations, what the New Jersey District Court called in the Sherrata case, the ineluctable consequence of rational negotiations. The workers' comp carrier knows this case might be worth $500,000 and maybe I've got a 50% chance that it's going to turn out my way or a claimant's way, but for the Social Security offset, it's only worth $300,000 maximum. So instead of $250,000, which I might otherwise pay, I'm only willing to pay $150,000. In that way, the entire Social Security offset is imposed in those negotiations. The problem with the you don't have any kind of permanent total disability here. It's not in the picture. The Social Security offset was not applied because there was no formal actual declaration of permanent total disability. If that's true, then every claimant who settles in Oregon a workers' compensation case on permanent total disability is going to have the offset imposed twice. Once, the workers' compensation carrier puts a lid on its exposure. I can't ever have to pay more than X, and X is lower than it otherwise would have been because of the Social Security offset. And then the Secretary turns around when a claimant gets Social Security and imposes the offset again. That's a double offset. There is no dispute in this case that Congress did not intend for there to be a double offset. Congress intended that the offset apply once to limit the claimant to the federal disability amount, 80% of prior earnings in effect. The Oregon statute says that when there's permanent total disability, that offset shall be imposed in the same amount. This is not like the Sherrata case where there was only a partial reverse offset applied. The reverse offset in Oregon is exactly the same as the federal disability amount. So when that negotiation occurs, and when the workers' comp carrier in the state lowers the amount that they're willing to pay, as far as the case can go, even if you've got a 100% chance of permanent total disability, what's happening is we're imposing the offset in those negotiations. The result of those negotiations is a payment to the claimant that is reduced in direct proportion to the Social Security offset. Now, the ALJ argued below, the Appeals Council repeated, well, wait a minute, the settlement document said right in there the claimant's been able to Settlement negotiations are a prediction about the future. Not just what might happen in litigation, but in disability cases, because workers' compensation goes on for more than just one adjudication, what's going to happen to the claimant? Is he going to be able to work? Is he not going to be able to work in the future? The prediction in that settlement agreement, which recites, yes, he had returned at that time to the workforce, the prediction is, however, that he's going to become disabled in the future. That settlement document paid $100,000 to the claimant for his rights to temporary disability, permanent disability, survivor's benefits, and vocational rehabilitation. None of those things is worth anything if claimant is working and works until retirement. It's clear from the agreement that paying $100,000 for those rights means both sides think, this guy's going to be disabled. And of course, they were right. That's what happened. That number was adjusted in the process of negotiations, again, as we proved by the workers' compensation lawyer's final note that says, well, Marlene Loggins, the adjuster, is thinking about whether she might just declare this permanent total disability and take the Social Security offset. Clearly, she's computing that as what she measures her settlement offer against. Mr. Cook, let me tell you what I see as the problem here. Apparently, the district judge ruled that there is evidence to support the argument that you're making, but there's also evidence to support what the ALJ did, and as long as there's some evidence to support what the ALJ did, you're obliged to affirm. Right. That would be true. I would disagree with its premise. If the ALJ is going to say, well, no, I believe something other than Doug Green, the lawyer who gave this evidence about what was happening in the settlement negotiations, he's got to say something about that. He's got to say, Green's not credible because, for any number of reasons, and in this circuit, he's got to give reasons germane to the case for disbelieving a witness, and he has not done that. That's thing one. Thing two is, there isn't evidence on the other side. The It shows that they were thinking about designating a permanent disability and applying the office, not that they definitely would. Right. I mean, that's plausible. Sure. As a matter of fact, that's fine. Our point would be, as a matter of law, it doesn't make any difference. The fact that they were thinking about it, they don't have to say he's permanently and totally disabled in order to be imposing this as a matter of fact in the settlement, because the settlement means they're never going to designate a permanent total. When he settles the case, he gives up the right for that to happen. If we go with the ALJ's reasoning in that respect and say, well, that only means they might designate a permanent total, that means never in settlement negotiations, in a settled case, will the reverse offset be deemed to have applied. We're only going to allow it to say, we're only going to say that it's applied when permanent total disability is actually adjudicated. And that means that the claimant is going to lose. Because when the insurance adjuster is thinking, well, maybe we'll make him permanent total. That's one of our alternatives. The insurance adjuster knows, if we do that, here's how much it can cost us, the most it can cost us. And when they're asking that question, they're thinking about the Social Security offset. It says so right in the file note. She's thinking about the Social Security offset. Any competent adjuster would. It puts a lid on what can possibly be offered in the case. That seems more the product of the Oregon law, which treats total disability differently than it does of a system or the decision made by the administrative law judge here. I mean, aren't you, in effect, trying to say the Oregon law is peculiar because it doesn't really work that way, so we ought to read the exception out of the statute? No, I'm certainly not saying that. The federal statute, statutory exception, of course, if taken literally, would say the reverse offset has been applied in every state no matter what. Read literally, this is the Swain case, the statute says, well, all you've got to have is a state in which there is provided for a reverse offset. It says nothing about actually applying it. And the Swain case said we're not going to go that far. To read it literally is to go too far. So I don't think the exception is read out of the statute. I think the exception means there shall not be a double offset. And in this case, there has been a double offset applied. Clearly, the amount that the claimant was able to receive has been lowered in direct proportion to the Social Security offset. I'd like to reserve the balance of my time if I may. Thank you very much. Good morning. Good morning, Your Honors. I'm Tom Ellsbury. I'm here on behalf of the Commissioner of Social Security. Mary, could you turn your mic up just a notch? I can step a little closer as well. Thanks. I guess I'd actually like to respond to the statements made right at the end of the statement. The exception actually does account for the facts of the situation. The exception for when reductions of Social Security benefits in relation to the state workers' comp benefits states specifically that there shall not be a reduction when there's a state law that provides for the reduction thereof when anyone is entitled to benefits. The problem here is the Oregon Statute 656-209 specifically states there is no reduction in benefits until actual receipt of federal Social Security benefits. So, therefore, in this case, it would be inconsistent with the reverse offset statute, Oregon statute, to have actually reduced the appellant's workers' compensation benefits because they were prohibited from is also an alternative rational interpretation of the facts of this case. I don't think that it fully represents the nature of the negotiations. For example, it is speculative for the state insurer to say, I will take it into consideration. It does not indicate that she actually reached a decision and reduced those benefits after that statement. It only shows that she was considering it. That's the nature of negotiations. Another part of the nature of negotiations is that you include within your document the elements that you agreed to. Now, appellant's counsel has argued that would preclude all claimants under a settlement from receiving their offset rights, their reverse offset rights. That's not true. That's part of the record. It's also part of what the ALJ considered in determining whether there was evidence of offset workers' compensation benefits. He, in fact, cites appellant's counsel's memo discussing this court's decision in Hodges and the administration's acquiescence ruling. And there, I think, is pertinent evidence right on that point. The pertinent language states in addressing what lawyers representing claimants should do, they state, lifetime proration language and language specifying the permanent total disability reverse offset should be used in all CDAs and DCSs. CDAs claim dispute agreements and DCSs dispute claims settlement. Right there is where they reserve their rights. Right there is where the negotiations reflect whether there was an offset or not. The ALJ probably relied on this as evidence that, in fact, there was no offset. The ALJ did not state that there was a formal adjudication required stating that there was permanent and total. The ALJ was reviewing the evidence to see whether, pursuant to the Oregon statute of workers' comp, reverse offset, there had been permanent and total disability and an offset had been applied. There's no evidence that there was an offset. There's speculation on the claimant's attorney's part, Attorney Green, below that he believed it would be between this figure and that figure. I believe it was 100,000 to 200,000. This doesn't give us a determinative figure to work with. The ALJ so found. He did not specifically reject Attorney Green's affidavit. He found that it was not determinative. It was not dispositive to the issue of whether the state insurance adjuster had actually applied the offset. This case really boils down, I believe, as the Finance Council noted, whether the ALJ's decision is free of legal error and whether his decision is supported by substantial evidence. The only legal error asserted was the adjudication, the formal adjudication. There is absolutely no evidence that, in fact, the ALJ's specific statement concluding the claimant was not, there had been no offset states, documentary evidence does not establish that the workers' compensation insurance carrier applied an offset. It doesn't state that he's requiring formal adjudication. He's just reviewing the evidence. So I don't believe there's any credible issue of error of law. And in regards to whether it's supported by substantial evidence, the ALJ's interpretation of the evidence is reasonable. It's supported. He cited the fact that the CDA noted the claimant was able to work. The definition of total disability under the Oregon statute indicates a preclusion from an ability to return to work. He noted that neither the CDA nor the DCS contained reverse offset language, which he found determinative or persuasive based in part upon Mr. Kuhn's memo, which I believe is why he cited it within his decision. Before we come down to two different decisions or two different interpretations of the facts, the ALJ's is reasonable and it's supported by the record, supported by substantial evidence. And then there is the appellant's interpretation of the evidence. I guess I'd like to address the appellant's reference to Sierra Rota. That case, I believe, also is supportive of the ALJ's and the Commissioner's position on this case. Their particular commitment to that case was finding that where they were reviewing an Oregon, or not Oregon, but the state statute that had stated that where any offset would be applied. This, again, I revert back to the discussion regarding the Oregon statute. It would not be applied here. There was no entitlement to the reverse offset. The Oregon statute is unambiguous. It's very clear. No reduction of permanent total disability benefits shall be made pursuant to this subsection unless authorized. That's sentence two. Sentence three, no reduction of benefits shall be authorized pursuant to this subsection except upon actual receipt of federal Social Security benefits. Here, appellant's Social Security benefits did not commence until, I believe it didn't apply until two years after his settlement. He had applied in 1995. We found him disabled as of that point and retroactive to 1994. There was no actual receipt. Actual receipt, incidentally, is defined under the Oregon law also as actual receipt. You have to be receiving. That's in the Fletcher case, which I cited in my brief. So the clear interpretation of the reverse offset statute under Oregon law is fully consistent with the ALJ's interpretation. In addition, in the event that this Court found that remand was appropriate in any event, appellant has also argued that there are no outstanding issues. There are many, many outstanding issues. As already stated, it's not clear what benefits, to what degree the benefits were reduced, presuming they were actually reduced. There's nothing on the record by which to determine. Now, appellant has argued that it's just a matter of law, and you can just clearly make, put in the calculations, and you can determine when. I believe this is part of the reason the Oregon statute prohibits a reverse offset until actual award of federal benefits, because there's nothing to calculate. He may apply later and be denied. He may apply later and be found disabled in 95 or 96. The state insurer has no basis to determine to what degree their liability under the reverse offset plan without actual benefits and basic disabilities to make those calculations. The Court has no more questions. Thank you very much. Mr. Coon, you've got about two minutes left. Thank you, Judge. I appreciate it. As to the question whether Mr. Green's affidavit established that there was an offset applied in the negotiations, I would refer the Court to R157. The amount of the workers' compensation the insurer was willing to pay Mr. Branson because of the risk of permanent total disability was discounted in direct proportion to the amount of the Social Security reverse offset. It is, of course, true that the offset could not formally be applied because permanent total disability would not be declared in this case, and the Oregon statute allows for the offset, reverse offset, only when permanent total disability is actually applied. And why would it not be declared? It would not be declared because we're settling the case. What plaintiff says when he files his claim, he says, I want permanent total disability. And the comp carrier says, no, we're not going to give it to you. Is there no way in documenting the settlement to have it described? I mean, couldn't something be said there that this recognizes an offset? Something could be said. The quotation from my memorandum is something I've been trying to do for comp lawyers for a long time, trying to get them to do this language. The question in this case is what happens when the guy doesn't put it in the agreement. Sure, that would have been better. It would have been clearer. But that does not take away from the fact that in these negotiations, the offset was applied. When that comp carrier is thinking, this is the top end of my liability. I cannot pay anymore. And the plaintiff's lawyer knows it. That offset is applied as sure as you can imagine. And there's no way that it cannot be. The insurance company is not going to forget about the offset. It establishes the rules of the game. The only evidence that we have of that is the memo by Mr. Green, who had no recollection of what actually happened, was relying upon a memo in his file where he determines what Ms. Green was thinking. And this is why this came about. I don't see how that carries the day. Right. He determines what she was thinking. That was a contemporaneous file note. He made it at the time when he was negotiating with Marlene Loggins. He said, well, we're talking about these numbers. And she's talking about the Social Security offset. Our point is, once she's talking about the Social Security offset, she knows and Mr. Green knows that they're going to use that when they're doing their numbers. They're saying, the limit we're going to have to pay is X because of the Social Security offset. She says, I'll evaluate that. At no point does she say, actually, she did take that into account or didn't take that into account. I see my time is up, if I may continue. It would be malpractice. She would be fired if she didn't take it into account. It's a factor that she has on her side. And it can't go away. It's a legal limit on what she's ever going to have to pay in the case. Unless she just forgets about it, which of course won't happen, she's going to take it into account. It's her basic limit on liability. Thank you very much. Thank you both gentlemen. The case has started. Next case is 03-35106 Andino v. Temerix State Housing Saloon in Greece. Each side has 10 minutes on this case.
judges: Silverman, Clifton, Zapata